**NO. 24-30684**

===============================================================

**In the United States Court of Appeals
for the Fifth Circuit**

UNITED STATES OF AMERICA, *Plaintiff/Appellee*

v.

TRAVIS ENCLADE; TERENCE WILSON *Defendants/Appellants*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA,
CIVIL ACTION NO. 2:22-cr-00238-BSL-EJD
HONORABLE JUDGE BRANDON S. LONG

_____

**BRIEF FOR APPELLANT TRAVIS ENCLADE**

_____

**JONATHAN P. LEMANN (#26380)
COUHIG PARTNERS, LLC
1100 Poydras Street, Suite 3250
New Orleans, LA 70163
Telephone:  (504) 588-1288
Facsimile:  (504) 588-9750
Email: lemannjp@couhigpartners.com**

*Attorney for Travis Enclade*

**NO. 24-30684**

============================================================

**In the United States Court of Appeals
for the Fifth Circuit**

UNITED STATES OF AMERICA, *Plaintiff/Appellee*

v.

TRAVIS ENCLADE; TERENCE WILSON *Defendants/Appellants*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA,
CIVIL ACTION NO. 2:22-cr-00238-BSL-EJD
HONORABLE JUDGE BRANDON S. LONG

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the persons having an interest

in the outcome of this case are those listed below:

1.  Travis Sental Enclade, Defendant – Appellant;

2.  John Hall Thomas, who represented appellant Enclade in the district court;

3.  Rachal Cox Cassagne and Andre Jones, Assistant United States Attorneys, who

    represent the Government in the district court, and before this Court;

4.  Jonathan P. Lemann, who represents appellant Enclade in this Court.

i

This certificate is presented so that the judges of this Court may evaluate possible disqualification or recusal.

/s/ Jonathan P. Lemann
Jonathan P. Lemann
*Attorney for Appellant Enclade*

ii

# STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Rule 34(a) of the Federal Rules of Appellate Procedure, and Local Court Rules 28.2.4 and 34.2, Appellant submits that oral argument would be of value to the Court in this case because the sufficiency of the evidence presented at trial with regard to the conspiracy conviction is a highly fact intensive issue to be reviewed de novo and reference and discussion of specific facts will aid in the resolution of the present appeal.

Appellant also believes oral argument may be helpful to the Court in deciding whether or not the trial court abused its discretion in instructing the jury and in admitting certain evidence. This is also a fact intensive argument that requires the Court to examine the entire record to determine both the abuse of discretion and the harm that resulted. As a result, Appellant feels oral argument would be helpful to the Court in analyzing the issue.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ...........................................................i

STATEMENT REGARDING ORAL ARGUMENT ..................................................iii

TABLE OF CONTENTS ..........................................................................................iv

TABLE OF AUTHORITIES ......................................................................................v

JURISDICTIONAL STATEMENT ........................................................................... 1

STATEMENT OF ISSUE PRESENTED FOR REVIEW ........................................ 2

STATEMENT OF THE CASE ................................................................................... 3

SUMMARY OF ARGUMENT................................................................................. 12

ARGUMENT............................................................................................................. 14

     A. INSUFFICIENT EVIDENCE ......................................................... 14

          1. Conspiracy to Distribute Narcotics Under Section 846................... 15

          2. Felon in Possession 18 U.S.C. § 922(g) ........................................ 23

     B. JURY INSTRUCTION .......................................................................... 24

     C. EVIDENCE WAS IMPROPERLY ADMITTED .................................. 27

     D. FAILURE TO GRANT A CONTINUANCE ......................................... 31

     E. THE SENTENCE WAS IMPROPER...................................................... 33

CONCLUSION.......................................................................................................... 40

CERTIFICATE OF SERVICE ................................................................................. 41

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ...................................... 42

# TABLE OF AUTHORITIES

## CASES

*Alleyne v. United States*, 570 U.S. 99, 116 (2013)………………………37

*Becker v. Tidewater, Inc.,* 586 F.3d 358, 369 (5th Cir. 2009). ...............................25

*Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946)……………………..25

*Gall v. United States*, 552 U.S. 38, 39 (2007)……………………………………..34

*Gandy v. State of Ala.*, 569 F.2d 1318 (5th Cir. 1978)…………………………..32

*Guzman v. Lensing,* 934 F.2d 80, 84 (5th Cir.1991)…………………………….21

*Hicks v. United States*, 150 U.S. 442, 452 (1893). ...............................................25

*Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)……14

*United States v. Aguirre-Rivera*, 8 F.4th 405, 411 (5th Cir. 2021)………………36

*United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006)……………………..33

*United States v. Akins*, 746 F.3d 590, 608 (5th Cir. 2014)………………………32

*United States v. Bermea*, 30 F. 3d 1539 (5th Cir. 1994)…………………………15

*United States v. Burton*, 126 F. 3d 666 (5th Cir. 1997)………………………….15

*United States v. Candia*, 454 F.3d 468 (5th Cir. 2006)…………………………34

*United States v. Carter*, 491 F.2d 625, 634 (5th Cir. 1974)…………………….26

*United States v. Chavira*, 209 F.3d 720 (5th Cir. 2000)
(*citing United States v. Steen,* 55 F.3d 1022, 1032 n. 23 (5th Cir.1995))……….21

*United States v. Danhach*, 815 F.3d 228, 235 (5th Cir. 2016) ...........................14

*United States v. De Leon*, 170 F.3d 494, 497 (5th Cir. 1999) …………………..20

v

*United States v. Espinoza*, 481 F.2d 553, 555 (5th Cir. 1973)……………….……33

*United States v. Freeman,* 730 F.3d 590, 595 (6th Cir.2013)…………………...29

*United States v. Ennis*, No. 23-30397, 2024 WL 3691719, at *1–3
(5th Cir. Aug. 7, 2024), <u>cert. denied,</u> No. 24-6114, 2025 WL 76702
(U.S. Jan. 13, 2025)…………………………………………………………15

*United States v. Fernandez*, 436 F.Supp.2d 983, 989 (E.D.Wis.2006)…………38

*United States v. Grinage,* 390 F.3d 746, 748–49 (2nd Cir. 2004)………………..30

*United States v. Haines*, 803 F.3d 713, 733 (5th Cir. 2015)…………………….29

*United States v. Hayes*, 794 F.2d 1348, 1352 (9th Cir.1986)……………………25

*United States v. Mann*, 493 F. 3d 484 (5th Cir. 2007)………………………………15

*United States v. Maseratti*, 1 F. 3d 330 (5th Cir. 1993)…………………………..15

*United States v. Mergerson,* 4 F.3d 337, 349 (5th Cir.),
*cert. denied,* 510 U.S. 1198, 114 S.Ct. 1310, 127 L.Ed.2d 660 (1994)………….21

*United States v. Naidoo*, 995 F.3d 367, 379 (5th Cir. 2021)……………………..25

*United States v. Nunez*, 889 F.2d 1564 (6th Cir. 1989)…………………………..21

*United States v. Onick*, 889 F.2d 1425, 1429–30 (5th Cir. 1989)..………………21

*United States v. Quiroz–Hernandez,* 48 F.3d 858 (5th Cir.1995),
*as modified on reh'g* (May 8, 1995)…………………………………………36

*United States v. Stevens*, 38 F.3d 167, 170 (5th Cir. 1994)………………………26

*United States v. Tobias*, 662 F.2d 381, 388 (5th Cir. 1980)……………………...33

*United States v. Tobias*, 662 F.2d 381, 409 (5th Cir. 1981)………………………33

*United States v. Ortega Reyna*, 148 F. 3d 540 (5th Cir. 1998)……………………15

*United States v. Santos*, 201 F.3d 953 (7th Cir. 2000)……………………………..32

*United States v. Warren*, 984 F.2d 325 (9th Cir. 1993)………………………….25

*U.S. vs. Bryant Daigre*, No. 21-356………………………………………………35

*U.S. v Celestin*, No. 21-125…………………………………………………….35

*U.S. vs. Floyd Robertson*, No. 22-89………………………………………………35

*U.S. v. Lott,* 310 F.3d 1231, 1249 (10tt Cir. 2002)………………………………32

*U.S. vs. Spencer Rounds*, No. 19-108………………………………………...35

**<u>STATUTES</u>**

Guideline §1B1.3………………………………………………………………….36

§4B1.2………………………………………………….....…………….………..35

18 U.S.C. Sections 922(g)…………………………………………….…… 23

18 U.S.C. Sections 922(g)(1)……………………………….………..…….…12

18 U.S. Code §3553…………………………………….………..…………….34

18 U.S.C. Section 3553(a)(6) ………………………………..…………….…...34

21 U.S.C. §841…………………………………………………………….. 2

21 U.S.C. § 841(a)(1) ……………………………………………………….3

21 U.S.C. § 841 (b)(1)(A) …………………………………………………..3

21 U.S.C. § 841 (b)(1)(B) …………………………………………………..3

21 U.S.C. §846…………………………………………….………………….2

21 U.S.C. §922(g) …………………………………………………………..2

21 U.S.C. §922(g)(1) ……………………………………………………..3

21 U.S.C. §924(a)(8) ……………………………………………………..3

28 U.S.C. §1291………………………………………………………..1

USSG 4D1.2(a)(2) ……………………………………………….37

## OTHER AUTHORITIES

Federal Rule of Evidence 701……………….……………………………..28

Federal Rule of Evidence 702…………………………………………..29

Local Court Rules 28.2.4 ……………………………………………iii

Local Court Rules 34.2 ………………………………………………iii

Rule 4 of the Federal Rules of Appellate procedure…………………………..1

Rule 34(a) of the Federal Rules of Appellate Procedure………………………iii

## JURISDICTIONAL STATEMENT

### A. The District Court's Jurisdiction

Appellant TRAVIS ENCLADE invokes the jurisdiction of this Court pursuant to the provisions of Rule 4 of the Federal Rules of Appellate procedure and 28 U.S.C. §1291 as this is a direct appeal of a final criminal conviction from the District Court.

## **STATEMENT OF ISSUES PRESENTED FOR REVIEW**

**POINT OF ERROR NUMBER ONE.** The evidence presented at trial was insufficient to sustain a conspiracy conviction on Count One of the Indictment under section 841 and 846. The evidence was also insufficient to sustain a felon in possession conviction on Count Four of the Indictment under section 922 (g).

**POINT OF ERROR NUMBER TWO.** The Trial Judge failed to fairly answer a jury question, and instead prejudiced Defendant by offering an answer which suggested that the jury's confusion was unfounded and that the elements of the offense were present in the evidence.

**POINT OF ERROR NUMBER THREE.** Defendant was prejudiced by the testimony of the lead investigating officer that violated the Rules of Evidence in numerous respects.

**POINT OF ERROR NUMBER FOUR**. Defendant was prejudiced by the arbitrary denial of his request for a continuance so that he could adequately prepare for trial with assistance of counsel.

**POINT OF ERROR NUMBER FIVE.** The trial court abused its discretion by sentencing Appellant at the top of the guideline range as reflected by the sentence imposed being significantly higher than the sentence received by the more culpable co-defendant.

2

**STATEMENT OF THE CASE**

On October 27, 2022, the Government named Terence Wilson and Appellant, Travis Enclade, in a five-count Indictment. Count One charged a conspiracy to distribute and possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841 (a)(1),(b)(1)(B). Count Two charged possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1),(b)(1)(B). Count Three charged Wilson possessed firearms having been convicted of a felony in violation of U.S.C. §§ 922(g)(1), 924(a)(8). Count Four charged Enclade possessed firearms having been convicted of a felony in violation of U.S.C. §§ 922(g)(1), 924(a)(8). Lastly, Count Five charged both with possession of firearms in furtherance of a drug trafficking crime.

On August 23, 2024, the Government named Wilson and Enclade in a five-count Superseding Indictment. Count One, conspiracy to distribute and possess with the intent to distribute 50 grams or more of methamphetamine, 40 grams or more of fentanyl, and 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A),(b)(1)(B), 846. Count Two, possession with intent to distribute 50 grams or more of methamphetamine, 40 grams or more of fentanyl, and 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A),(b)(1)(B). Counts Three, Four, and Five of the Superseding Indictment charged the same as the Indictment. Counts

3

One, Two, and Five charged Enclade and Wilson. On October 3, 2024, the Government named Wilson and Enclade in a five-count Amended Superseding Indictment. Counts One through Five charged the same as the Superseding Indictment.

Appellant, Travis Enclade, pleaded not guilty to all four counts that he was charged with of the amended superseding indictment. A jury trial of this matter was held; and, on October 9, 2024, Mr. Enclade was acquitted of Counts 2 (possession with intent distribute) and 5 (possession of firearms in furtherance of a drug trafficking crime). He was convicted on Count 1 (conspiracy to distribute methamphetamine, fentanyl, and heroin) along with his co-defendant Terrence Wilson, and on Count 4 (felon in possession of firearms). The trial evidence revolved around three residences: one at 4235 Hollygrove Street, New Orleans (Wilson's father's home); one at 3511 Encampment Street leased by a friend of the defendants, Stacia Caston; and a third at 4558 Camelot Drive, New Orleans (Enclade's son and his son's mother's residence).

The Government's case was nearly entirely built on surveillance as described by DEA agent, Steven Brens. Brens identified 3511 Encampment Street, New Orleans as a residence where Wilson and Enclade would store narcotics, firearms, and money. ROA.24-30684.689-690. He claimed that Wilson and Enclade visited 3511 Encampment Street daily, entering through the front door using a key at various hours throughout the day and night. ROA.24-30684.722. Their visits to this house were generally short.

4

The Government relied heavily on August 25 and 26, 2022, surveillance at 4235 Hollygrove Street, New Orleans (Wilson's father's home) which showed Wilson and Enclade on the front porch of the residence and Wilson allegedly possessing a black semi-automatic handgun in his front waistband and was holding two bags. Exhibits 2b and 2c; ROA.24-30684.1094-1096. The Government claimed, "They did this at the Hollygrove Street residence, where, in fact, you all saw screenshots of Mr. Wilson conducting hand-to-hands while possessing a firearm." ROA.24-30684.1008.

The Government also argued that officers did surveillance, and they observed Mr. Wilson and Mr. Enclade conducting hand-to-hand exchanges consistent with drug trafficking at the Hollygrove residence. ROA.24-30684.1008. Brens also identified both of them going back and forth, separately, and together, to the stash house on Encampment Street in a manner that led to suspicion that it was being used as a stash house. ROA.24-30684.721-722. However, none of the videos actually depicted Enclade possessing a firearm or conducting drug transactions. See ROA.24-30684.1090-1105.

The Government also placed much stock on August 18, 2022, surveillance of Enclade's residence located at 4558 Camelot Drive, New Orleans. During that time, Brens claimed to observe Wilson parked in front of the residence in a silver Chrysler 300 and Enclade leaning into the vehicle before sitting in the passenger seat. ROA.24-30684.696-698 and Trial Exhibits 1b and 1c, ROA.24-30684.1091. Soon after,

5

Enclade exited the vehicle carrying a clear plastic bag containing a tan substance (suspected heroin). ROA.24-30684.1205. Brens testified it "looks like he is holding package of narcotics." ROA.24-30684.697. Brens then contradicted his own claim that Enclade was holding narcotics visible to the world and the surveillance camera, when he then claimed that "nature of the meeting" with him leaning into the vehicle "so he's not seen from the exterior" suggested narcotics. ROA.24-30684.697. If Enclade was careful of enough to duck inside the car to conceal the contents of his hand, why would he then hold it open seconds later? Brens' suspicion as to the contents of the "bag" is far from evident from the video which in fact is not even clear as to what if anything Enclade is holding beyond a phone and vape:





See Exhibit 1B. ROA.24-30684.1091.

The most pointed bit of evidence submitted as to Enclade involved a backpack. The Government claimed Enclade was seen bringing a backpack into Encampment, and later that backpack was seen under the kitchen cabinet with drugs in it. ROA.24-30684.1721.; ROA.24-30684.745; Exhibit 31, ROA.24-30684.1133. "Inside that backpack, methamphetamine, heroin, large amounts of it. On the right, you see the bag with the methamphetamine in it, individually packaged. Again, purpose: Distribution. That's the result of Mr. Enclade and Mr. Wilson together conspiring, jointly and constructively, possessing these drugs for distribution." ROA.24-30684.1011.

The Government insisted that the conspiracy started as far back as August of 2022. ROA.24-30684.1013. It offered Mississippi State Trooper Ron Bridges to testify

that on August 17th, 2022, he conducted a traffic stop of a Chrysler 300 registered to Mr. Enclade. The Government made a big point that Mr. Enclade as the passenger, and Mr. Wilson as the driver, confirmed their conspiracy relationship together as there were drugs in the car. ROA.24-30684.863-865.

Wilson was ultimately arrested in Enclade's vehicle when he went to meet with Plaquemines Parish officer Mr. McLean. And in that car were several drugs and a gun: "Again, confirming their conspiratorial relationship." ROA.24-30684.1007. Curiously, neither the Government nor officer McLean had a very plausible explanation for why the "text-negotiated" quantity of drugs was **not** in the truck driven by Wilson supposedly to conduct the deal. While Mr. Wilson was in jail, he called and spoke to Mr. Enclade and referenced "Ray." ROA.24-30684.715-717. This was lingo according to officer Brens. ROA.24-30684.716.

On October 12, 2022, a search warrant was executed at 3511 Encampment Street, and the Government claimed there were only a few items of furniture in the home. The Government claimed that there were no utensils, bowls, or plates in the cabinet, and the refrigerator was nearly empty. The Government introduced various mail items, bills, and other documents containing Wilson's name as well as photographs depicting Wilson in the home. ROA.24-30684.1153-1156. The Government claimed to have seized drug paraphernalia, 535.91 grams of heroin, 112.5 grams of fentanyl, 363 grams of methamphetamine, 327.5 grams of pure

methamphetamine (actual). ROA.24-30684.1207. A search warrant at 4558 Camelot Drive, New Orleans allegedly produced the Ruger Enclade was charged with possessing. ROA.24-30684.1208. As to the felon in possession charge, Agent Baca testified that he found the gun on the man's side of the master bedroom closet. He then asked Enclade about guns, and Enclade acknowledged that the gun was in the closet, thus confirming his knowledge of the presence of the gun and his possession of that firearm. ROA.24-30684.931-934. But counsel for Enclade established with Baca that others were present in the apartment and neither firearm was submitted for forensic testing. ROA.24-30684.931-939.

The Government's closing argument was that the house on Encampment Street was a drug factory, a stash house, a house for a large quantity of methamphetamine, heroin, and fentanyl. "It was the hub of a large-scale drug trafficking operation, and that operation was run by, maintained by, and protected by Terence Wilson and Travis Enclade." ROA.24-30684.1006. The Government claimed, "that Wilson and Enclade conspired to distribute and possessed with intent to distribute methamphetamine, heroin, and fentanyl. They worked together, and they jointly and constructively possessed these drugs with the intent to distribute them. They had dominion and control of their stash house and everything in it." ROA.24-30684.1007. Thus, the Government infused its conspiracy claim with alleged possession of drugs with intent to distribute them.

9

But, in fact, evidence showed Encampment was lived in and was not a drug factory beyond a reasonable doubt. There was testimony of defendants moving mattresses in. ROA.24-30684.765. A photo exhibit showed the mattress and Wilson's father was laying on it. It also depicted a big flat screen TV where -- up on the wall, installed, and being viewed by Mr. Wilson. ROA.24-30684.1159. Ms. Stacia Caston testified she knew Terence Wilson wanted to bring his father there. ROA.24-30684.925. The evidence was that pole camera was up for 20 days, but no hand-to-hand transactions were captured. ROA.24-30684.707.

Cross examination revealed that there was a very unreliable association made between the backpack found with narcotics and the one supposedly worn by Enclade one week prior to the execution of the search warrant. ROA.24-30684.777-781. Brens' credibility was called into question as well as his interpretation of the jail house call. ROA.24-30684.806-808. Defense counsel pointed out the evidence was limited to three occasions in three weeks where Travis Enclade entered that residence but none showing that Travis Enclade was a participant in a drug dealing conspiracy. ROA.24-30684.1022,1027-1028.

In closing the defense highlighted that the Government had not delivered any hard evidence that would let the jury have some assurance that Travis Enclade ever handled any of drugs, scales, the kilo press, or had anything to do with any of that other than walking through the house. ROA.24-30684.1018-1024. The defense highlighted

10

Exhibit 57, a photo of another backpack and compared it to Exhibit 8. ROA.24-30684.1159 and ROA.24-30684.1110. Agent Brens was nonetheless convinced that the one that Mr. Enclade was walking in with is the one that was hidden under the sink in the cabinet. ROA.24-30684.780-781; ROA.24-30684.1104. But Brens often had to back down from similar conclusory statements. In fact, Brens had to back off his certainty as to a hand to hand because elsewhere he had admitted to not seeing any. ROA.24-30684.795. The defense pointed out there were no witnesses, or a single drug customer identified. There was no hard evidence showing him making a drug sale. There was one picture of him supposedly with a plastic bag, but only speculation as to the contents which were not recovered let alone tested. ROA.24-30684.102

On October 9, 2024, Appellant received a trial by jury and was found guilty of Counts One and Four and was found not guilty on Counts Two and Five. Appellant returned to Court on April 15, 2025, and received a sentence of 288 months.

## SUMMARY OF ARGUMENT

**NUMBER ONE.** Appellant submits that the evidence presented at trial was insufficient to support a conviction under in violation of 21 U.S.C. §§ 841(a)(1),(b)(1)(A),(b)(1)(B) and 846 for conspiracy and under 18 U.S.C. Sections 922(g)(1) for felon in possession of a firearm. Counsel moved for a directed verdict at the close of the Government's evidence and at the close of all evidence.

First, the Government failed to prove beyond a reasonable doubt the existence of a conspiracy and failed to show Enclade was a part thereof. The most the Government could prove was that Enclade was present at the scene of an offense committed by others. There was no evidence presented that Enclade even knew of the offense, much less participated in it.

Additionally, the Government failed to prove beyond a reasonable doubt that Enclade conspired to distribute and possess with the intent to distribute 50 grams or more of methamphetamine, 40 grams or more of fentanyl, and 100 grams or more of heroin as alleged in Count One of the amended superseding indictment. The jury came back and acquitted Enclade on the charge of possession with intent to distribute, which undercuts and calls into question the finding that he engaged in a conspiracy to do the same thing.

Likewise, the Government failed to adduce legally sufficient evidence that Enclade possessed a firearm as alleged in Count Four. There is no evidence, photos, or

12

videos, of Enclade possessing a firearm. There were two other firearms were found at Enclade's residence at 4558 Camelot Drive, one Smith & Wesson firearm and one Ruger Pistol. The Smith and Wesson was registered to Enclade's girlfriend and was not seized. The Ruger Pistol was stolen and assumed to be Enclade's. There is no video, photograph, or evidence proving that the firearm belonged to Enclade besides finding the firearm in his home. The Ruger Pistol could have been his girlfriend's gun along with the registered Smith & Wesson. Being in the presence of firearms does not mean the same as possessing firearms, so the two firearms found at Camelot Drive should be considered Enclade's girlfriend's firearms.

As no rational trier of fact could have found all of the essential elements of the offenses alleged in Counts One and Four, the district court erred in denying Enclade's motion for an instructed verdict as to each count.

**NUMBER TWO.** The jury's note to the Trial Court demonstrates that even they did not believe Appellant was in actual or constructive possession of the firearms. The jury asked the trial court "Does living in a house with a firearm as a convicted felon constitute possession?" The answer to that question is simply "no," or "not necessarily" but the Trial Court reiterated previous instructions which appears to have influenced the jury into assuming living in house is *per se* possession of a firearm.

**NUMBER THREE.** Agent Brens was allowed to testify unfettered and the admission of his testimony violated Federal Rules of Evidence 701 and 702.  His

13

suggestions that he knew what a drug transaction looks like, that a jail house call was riddled with drug lingo, and his positive identification of a backpack associated with Enclade all prejudiced the jury against Enclade unfairly.

**NUMBERS FOUR.** Defendant was denied due process and his Sixth Amendment right to assistance of counsel by the Trial Judge's arbitrary refusal to grant his request for a continuance despite his reporting that he had no trial discussion meetings with counsel and had been provided NO discovery.

**NUMBERS FIVE.** Enclade was inappropriately sentenced to a term too long despite his valid objections to positions in the Pre-Sentence Investigation Report and the valid legal arguments in his motion for a downward departure and/or variance.

## THE ARGUMENT

### A. Insufficient Evidence

The Standard of Review for Point of Error Number One is a de novo review. When a defendant moves for acquittal in the district court as appellant herein did[1], this court reviews challenges to the sufficiency of the evidence de novo. *United States v. Danhach*, 815 F.3d 228, 235 (5th Cir. 2016). In determining whether the presented evidence was sufficient to convict Enclade of Counts Two and Five of the superseding indictment, the Court must determine whether a rational trier of fact could have found all of the essential elements of the charged offense beyond a reasonable doubt. *Jackson*

---

[1]ROA.24-30684.956.

*v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *United States v. Mann*, 493 F. 3d 484 (5th Cir. 2007). The court need not find that the evidence excludes every reasonable inference of innocence, or that the evidence is inconsistent with every conclusion except guilt. *United States v. Burton*, 126 F. 3d 666 (5th Cir. 1997); *United States v. Bermea*, 30 F. 3d 1539 (5th Cir. 1994). However, if the evidence tends to give equal or nearly equal circumstantial support to guilt and to innocence, reversal is required. *United States v. Ortega Reyna*, 148 F. 3d 540 (5th Cir. 1998).

### 1.    Conspiracy to distribute narcotics under section 846

Count One of the Superseding Indictment charged that beginning on a date unknown, but prior to August 17, 2022, and continuing to on or about October 12, 2022, Wilson and Enclade conspired to distribute and possess with the intent to distribute 50 grams or more of methamphetamine, 40 grams or more of fentanyl, and 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1),(b)(1)(A),(b)(1)(B) and 846. A person becomes involved in a conspiracy if he knowingly participates in a plan to distribute drugs, whether by buying, selling or otherwise. *United States v. Maseratti*, 1 F. 3d 330 (5th Cir. 1993). In other words, the "essential elements of a drug conspiracy are (1) an agreement by two or more persons to violate the narcotics laws; (2) a defendant's knowledge of the agreement; and (3) his voluntary participation in the agreement." *United States v. Ennis*, No. 23-30397, 2024 WL 3691719, at *1–3 (5th Cir. Aug. 7, 2024), <u>cert. denied,</u> No. 24-6114, 2025 WL 76702 (U.S. Jan. 13, 2025).

15

The Jury in this matter received the following instruction:

Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may have associated with each other and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. A person who has no knowledge of a conspiracy, but who happens to act in a way that advances some purpose of a conspiracy, does not thereby become a conspirator. ROA.24-30684.985.

The Government failed to establish any evidence whatsoever of a conspiracy as required. Nothing adduced by the Government established beyond a reasonable doubt that Enclade had any agreement with any other person to possess with the intent to distribute methamphetamine, fentanyl, and heroin. If there was no agreement, then Enclade could not have known of any unlawful purpose of some phantom agreement. The only evidence offered established that Enclade had an association with Wilson. As per the instruction above, this is insufficient.

If he had no knowledge of any agreement, he could not have joined it willfully. Therefore, there is no evidence upon which any rational trier of fact could have found the elements of a conspiracy beyond a reasonable doubt as charged in count one of the second superseding indictment.

For instance, Exhibit 57 was a picture of a backpack under the sink that was suggested to be the one seen on Mr. Enclade. Without proper testing on the backpack the jury correctly rejected this as proof of possession and likewise should have as proof of conspiracy. ROA.24-30684.1019. It was urged that Exhibit 8 reflected, yet another

16

backpack. The testimony Agent Brens' testimony was the only offered proof that the one that Mr. Enclade was walking in with is the one that was hidden under the sink in the cabinet. On cross Brens admitted he did not know what was in the bag in the video. ROA.24-30684.775. The video depicting this backpack is far from conclusive, it appears to be a bag with a shoulder strap if anything and very much was stretch to say with certainty that it depicts a black backpack.



17

Counsel for Enclade at trial established Brens did not know what was in Enclade's hand or in the "plastic bag" on the surveillance that factored so heavily in the government's case. He established that the bag was likely Enclade's possessions returned from his Mississippi arrest. ROA.24-30684.775.

Brens simply was not credible. He had to concede on cross examination that the surveillance he identified as showing Wilson conducting hand to hand transactions was the same transaction in an earlier report he described as not demonstrating hand to hand transactions. ROA.24-30684.795. He was the basis of the conspiracy case against Enclade, yet his testimony was riddled with supposition and speculation. His testimony about observing a hand-to-hand transaction contradicts his affidavit statement referring to video 2A. ROA.24-30684.795. He "suspected" and "believed it was an indication of narcotics dealing". ROA.24-30684.699, 701, 707.  He knew of Hollygrove "through other investigations." ROA.24-30684.715. He "believe[d]" the recorded call was "talking about narcotics" including reference to Ray. ROA.24-30684.716.

The video of the "transaction" involving Wilson zooms into the license plate of the alleged purchaser's truck just at the moment Brens told the jury that the hand to hand occurred. ROA.24-30684.794-795. He later admitted he could not say for sure a transaction had occurred, but he wrote a report stated one had occurred. On cross examination he "believed it was a narcotic transaction." ROA.24-30684.790. He

18

admitted it was "either bulk currency or narcotics" exchanged, but he could not say which. ROA.24-30684.797.

Thus, the evidence offered amounts to (a) some association with Wilson; (b) video of Enclade emerging from a car in front of his own house with a phone and vape in his hand and possibly something else, but that image is far from conclusive; (3) depictions and testimony of him going to the Encampment Street residence including one purporting to show him with a backpack that looks more like a satchel with a shoulder strap; and (4) a jail house call with a reference to "Ray."

The association with Wilson is entitled to no inference of a conspiracy given that they are related. 24-30684.654. The Government made much of this relationship and of the fact Wilson was arrested in Enclade's truck. A more compelling inference to be drawn from that fact is that Enclade was **not** involved in any conspiracy with his cousin, because had he been he surely would have been in the truck when Wilson was arrested. The video of him with his possessions on the day he was released from is not entitled to any inference of a conspiracy. The officer admitted he could not tell if it was currency or narcotics and it does even clearly show a plastic bag. The backpack is not clearly the one pictured on Mr. Enclade a week early which in fact appears to be a satchel with one shoulder strap. Encampment Street *did* have items other than narcotics related ones including an ambulatory impaired older gentleman, Edgar Wilson. The reference to "Ray" is entitled to no inference of conspiracy. By Brens' own admission,

19

'Ray" is not a commonly used term for narcotics, and therefore his theory makes no logical sense. If in fact Wilson was intending to direct Enclade to remove "Ray" from the cabinet in light of his arrest and probable scrutiny from officials, then why were narcotics found in the house at all when the warrant was executed?

As urged by counsel in closing, the Government did not deliver hard evidence that would let the jury "have some assurance that Travis Enclade ever handled any of those packages of drugs, ever touched those scales, ever touched that press, the kilo press or whatever it was in the closet, or had anything to do with that other than walking through that house." ROA.24-30684.1026. No DNA or fingerprints from the scale, the mixer, or the bag were offered, but rather only speculation that Enclade was connected or had knowledge of them. ROA.24-30684.1028-1032. None of Enclade's clothing or effects were found on Encampment ROA.24-30684.1036. Again, the Government is required to show more than access to the place in which contraband or an illegal item is discovered. Having access to the place is insufficient by itself in establishing constructive possession when there is joint occupancy of a place. *United States v. De Leon*, 170 F.3d 494, 497 (5th Cir. 1999). This shaky evidence is insufficient for any reasonable juror to conclude proof of a conspiracy beyond a reasonable doubt.

The Government did not prove Enclade had any agreement or participation in a narcotics law violation. It was established Kerry Armour was the original target of the investigation. ROA.24-30684.781. The investigation then turned to Wilson's allegedly

20

agreement with McLean to enter a drug transaction. ROA.24-30684.783. An agreement with law enforcement is not sufficient to establish a conspiracy. *United States v. Nunez*, 889 F.2d 1564 (6th Cir. 1989). The reality is this case stemmed from an investigation of Wilson and others. Wilson allegedly arranged a deal with McLean and traveled to meet him. Wilson allegedly conducted surveilled hand to hand transactions (Exhibit 2b) while being seen with a firearm. The only proof against Enclade was that he interacted with Wilson and the Encampment house, but there is ample reasonable doubt for why that might have been beyond conspiring to sell drugs.

Moreover, it is clear that the government theory on conspiracy was closely tied to it claim charge of possession with intent to distribute. The case law is clear that evidence of residing at a house where narcotics are found and close association with a person involved in narcotics is not sufficient to prove constructive possession. *United States v. Chavira*, 209 F.3d 720 (5th Cir. 2000) (*citing United States v. Steen,* 55 F.3d 1022, 1032 n. 23 (5th Cir.1995)). The argument that the cocaine had to pass through common areas of the house to reach the compartments "does not implicate Chavira without some evidence that she was present during any such transfer." *Id.* In determining what constitutes dominion and control over an illegal item, this court must consider not only the defendant's access to the dwelling where the item is found, but also whether the defendant had knowledge that the illegal item was present. *Guzman v. Lensing,* 934 F.2d 80, 84 (5th Cir.1991). The mere fact that the defendant had a key

21

to an apartment where cocaine was found is insufficient to establish that he exercised dominion or control over the cocaine. *Id.*

Control over the place in which contraband or an illegal item is discovered is insufficient by itself in establishing constructive possession when there is joint occupancy of a place. *United States v. De Leon*, 170 F.3d 494, 497 (5th Cir. 1999); *United States v. Mergerson,* 4 F.3d 337, 349 (5th Cir.), *cert. denied,* 510 U.S. 1198, 114 S.Ct. 1310, 127 L.Ed.2d 660 (1994). In *United States v. Onick*, 889 F.2d 1425, 1429–30 (5th Cir. 1989) the Court found that the evidence does not show that Onick *actually* possessed the drugs:

> "She did not carry drugs. The room in which she sat contained no drugs nor drug paraphernalia. No one testified that Onick possessed any drugs when the police searched the house or at any other time. Nor does the evidence demonstrate that Onick *constructively* possessed the drugs. At most, the evidence permits us to infer that Onick associated with Tolliver, visited Tolliver for the night, knew that the house contained a safe, and knew the safe combination." *Id.*

As such, and as in this case, a reasonable jury could not conclude that the exercise of "dominion and control over the premises or the drugs themselves even if it drew these inferences from the evidence." For the jury "to impute dominion or control to Onick, it must have *speculated* Onick into a conviction." *Id.*

The jury in this case acquitted Enclade of constructive possession. This, all the more, calls into question its faulty decision to convict on conspiracy. The evidence was insufficient for either charge.

22

2.      **Felon in possession 18 U.S.C. § 922(g)**

No rational trier of fact could have found all of the essential elements of the felon in possession beyond a reasonable doubt. Count Four charged that on or about October 12, 2022, Enclade possessed firearms after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(8). To sustain a conviction under 18 U.S.C. 922(g) the evidence must establish beyond a reasonable doubt that the Defendant has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year and that possessed in or affecting commerce, any firearm or ammunition; or received any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. 18 U.S.C. 922(g).

There was no hard evidence presented on this charge. No DNA or fingerprint analysis was offered. There was only testimony from an officer who claimed Enclade admitted to possessing a Ruger, but no video of this was presented; and, supposedly, there was video of the officers executing the warrant at Camelot that day. ROA.24-30684.1018. No photos of Enclade with a firearm were introduced. The Ruger was not submitted for fingerprint testing. ROA.24-30684.776. Englade was not the registered owner of the gun. ROA.24-30684.779. Brens acknowledged nothing that placed the gun in Enclade's possession ROA.24-30684.777. Enclade supposedly informed officer Baca of the location of the weapon, but this is not an acknowledgement that the weapon was his. ROA.24-30684.932. In fact, the evidence demonstrated that the residence was

23

not his alone, a non-felon lived there. The exhibits of the firearm in the closet show that it was in plain view. ROA.24-30684.1187-1188. Assuming the jury did credit Baca's testimony that Enclade directed him to this firearm, it was in plain view, not requiring any specific or inside knowledge, and certainly not demonstrative of his individual dominion over it.

The defense pointed out to the jury that "When you have ATF Agent Tonglet saying Travis Enclade made a statement to me that it was his gun, but he doesn't have any kind of video of this. Remember, he told you he made a video of the search of the house on Camelot, which was Travis Enclade's girlfriend's house." ROA.24-30684.1018. There was no testing and no actual hand to hands observed. This shaky evidence is insufficient for any rational juror to conclude proof of a felon in possession beyond a reasonable doubt.

## B. Jury Instruction

During deliberations in this matter, the jury came back with a question:

"Does living in a house with a firearm as a convicted felon constitute possession?" ROA.24-30684.1046.  See also ROA.24-30684.324.

Rather, than directly answer the question with its rightful answer, "no" or even "not necessarily", the Court merely re-read the instructions on possession. ROA.24-30684.1054.

Under any system of jury trials, the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is

received with deference and may prove controlling. *Hicks v. United States*, 150 U.S. 442, 452 (1893). When a jury seeks clarification of particular issues, the judge should clear away its difficulties "with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612-13 (1946). "Supplemental instructions must be 'reasonably responsive' and 'allow[ ] the jury to understand the issue presented to it." *United States v. Naidoo*, 995 F.3d 367, 379 (5th Cir. 2021).

A trial court's inadequate response to a jury question may constitute reversible error. *See United States v. Warren*, 984 F.2d 325 (9th Cir. 1993). The standard of review is abuse of discretion. *United States v. Hayes*, 794 F.2d 1348, 1352 (9th Cir.1986). An error in criminal jury instructions requires reversal unless there is no reasonable possibility that the error materially affected the verdict, or in other words, that the error was harmless beyond a reasonable doubt. *Warren*, 984 F.2d at 331. That standard also applies when a court errs in answering the jury's questions regarding instructions. *Id*.

The Sixth Circuit Court of Appeals dealt with a case similar to the one currently before the Court in *United States v. Nunez*, 889 F.2d 1564(6th Cir. 1989). In *Nunez*, the Defendant was charged with conspiracy to possess cocaine with the intent to distribute. *Id*. During deliberations the jury sent out a note asking if a law enforcement officer could be a co-conspirator. *Id*. This would be a question of law, not of fact, and counsel requested an instruction that there could not be a conspiracy between only one of the defendants and the law enforcement officer. *Id*. The trial court instead of answering the

25

jury's question directly, the judge simply repeated the definition of a conspiracy from the original charge. *Id*. The Sixth Circuit held the case should be reversed as to the defendant Nunez due to the court's failure to properly instruct the jury. *Id*.[2]

In *United States v. Stevens*, 38 F.3d 167, 170 (5th Cir. 1994), the Fifth Circuit concluded that the trial judge's answer to the jury's question was not responsive and did not clear away the confusion and difficulty the jury had in deciding how to use a photograph of a revolver which was not the fireman defendant was charged with possessing as a felon. Because "this confusion may well have caused the jury to find [defendant guilty]", the Fifth Circuit vacated the conviction and remanded. *Id.*

The Fifth Circuit has further instructed that "when the jury requests further instructions on points which are favorable to the Government, the trial judge should repeat instructions favorable to the defense where the requested instructions taken alone might leave an erroneous impression in the minds of the jury." *United States v. Carter*, 491 F.2d 625, 634 (5th Cir. 1974). Further if the instructions requested by the jury were not inherently favorable to either side; the trial court commits error in going beyond the request to provide additional instructions strongly emphasizing the theory

---

[2] *See also United States v. Warren*, 984 F.2d 325, 330 (9th Cir. 1993)(finding it not sufficient for the court to rely on more general statements in its prior charge because "[r]eferring the jury back to the original instruction would not correct the apparent impression of at least some jurors that intent 'to hurt' rather than 'to kill' might be sufficient" to convict for first degree murder.")

of the prosecution. *Id.* In *Carter,* the Court reversed "unable to assure ourselves that the trial judge did not inadvertently ad lib the defendant into a guilty status." *Id.*

In light of the minimally incriminating nature of the evidence against Appellant for felon in possession discussed in the first point of error, this error in responding to the jury question cannot be said to harmless beyond a reasonable doubt. The Judge's response undoubtedly left the jury with the impression that *merely* residing in a house containing a gun *was* constructive possession. The response implied a guilty status. If the jury had been told that mere proximity to guns was insufficient to sustain a conviction, Appellant would have received a not guilty verdict on Count 4 of the superseding indictment.

## C. Evidence was Improperly Admitted

As mentioned, the centerpiece of the Government's case was the testimony of Officer Brens which lasted nearly the whole first day of testimony. Officer Brens testified at length in this matter and his testimony was highlighted in the closing remarks for the Government. Key aspects of his testimony were his insistence that "Ray" has some narcotics connotation, his conclusion a picture of a backpack on Mr. Enclade matched one recovered at the scene, and his assurances to the jury that he knew what a drug transaction looked like.

While on the stand Brens discussed phone call between Wilson and Enclade in which there was a reference to "Ray." Brens claimed "Ray" was a reference to drugs- with no sensible explanation and no foundation. 24-30684.715 -716. He stated:

> "Drug traffickers will use terms to speak about narcotics and it's not going to be readily understandable. Like Ray. Ray can be a reference to narcotics, such as girl is a reference to cocaine, and boy is a reference to heroin commonly. Heroin can also be called food or dog food is a common term on the street that is used."

Brens later admitted that there was no basis for this other than drug dealers use code and this "could be" some version of that. ROA.24-30684.808. The evidence in fact suggests "Ray" was a reference to a person since a phone number was asked for and a phone number given immediately after the reference. ROA.24-30684.807. Earlier, Brens linked a video allegedly depicting Wilson with a firearm with the firearm in evidence that Wilson was charged with. This testimony was very prejudicial, although it related to a video of Wilson, as the argument throughout was that Enclade was involved in a conspiracy with Wilson. This testimony came in over counsel's objection as to the speculative nature of it. ROA.24-30684.706. Brens reviewed Exhibit 3H and determined that it was Enclade with a backpack. ROA.24-30684.721. He later linked photographs of a backpack with drugs located at Encampment during the search warrant, Exhibits 30 and 31. Page ROA.24-30684.743-744,

An investigating officer has some latitude in offering expert and lay testimony, but it is not boundless. Federal Rule of Evidence 701 provides:

28

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

"[L]ay opinion testimony is permitted under Rule 701 because it has the effect of describing something *that the jurors could not otherwise experience for themselves* by drawing upon the witness's sensory and experiential observations that were made as a first-hand witness to a particular event." *United States v. Haines*, 803 F.3d 713, 733 (5th Cir. 2015) (citing *United States v. Freeman,* 730 F.3d 590, 595 (6th Cir.2013) (emphasis added) (citation omitted). Testimony on topics that the jury is fully capable of determining for itself is not "helpful to clearly understanding the witness's testimony," Fed.R.Evid. 701, and therefore is inadmissible under Rule 701. *Haines*, 803 F.3d at 733.

In *Haines,* the agent's testimony interpreting the wiretapped phone calls frequently failed to distinguish between his opinion testimony based on his years of experience investigating drug crimes and his fact testimony based on his knowledge of the particular conspiracy at issue in the case, which "le[ft] the jury to wonder who was testifying, [Lockhart]-the-expert or [Lockhart]-the-case-agent." *Id.*at 732 *citing York,* 572 F.3d at 426 (finding opinion evidence admitted in error). The agent was presented to the jury "with an aura of expertise and authority," which increased the risk that his testimony would improperly sway the jury. *Id.* at 734.

29

Likewise, officer Brens' testimony meandered between supposed expertise and supposed knowledge of the case. He was not proffered as an expert, and the scope of his testimony, particularly in identifying backpacks, explaining jailhouse calls, and opining what a drug scene "looks like", exceeded what is allowable under Rule 701. *United States v. Haines*, 803 F.3d 713, 734 (5th Cir. 2015) ("This testimony was admitted in error because it went beyond Lockhart's expertise and personal knowledge of the investigation and instead ventured into speculation, usurping the jury's function, which is to draw its own inferences from the evidence presented."); *United States v. Grinage,* 390 F.3d 746, 748–49 (2nd Cir. 2004) (a DEA agent's testimony that several intercepted phone calls using the phrases "I need something bad, bad, bad," and "I need about nearly four," were drug-related was improper as lay opinion because it "usurped the function of the jury to decide what to infer from the content of the calls.)

To the extent Brens' testimony regarding "Ray" or matching backpacks is not excluded under Rule 701, it surely would not meet the requirement of Rule 702 as no foundation was given for the interpretations. Defendants preserved these arguments by virtue of counsel for Wilson's objection. ROA.24-30684.706. Preserved objections regarding the admission of expert or lay testimony are reviewed for abuse of discretion, subject to harmless error analysis. *Haines*, 803 F.3d at 726. The testimony was certainly prejudicial. Brens improperly swayed the jury by insisting that a vague reference to "Ray" was drug dealer lingo. The speculative tying of Enclade to the

backpack with narcotics was the basis for the guilty finding as it related to participation in a conspiracy, just as the linking of Wilson to a firearm no doubt prejudiced Enclade in the eyes of the jury.

The backpack identification evidence was further improperly prejudicial to Mr. Enclade when during the course of the Government's closing the prosecutor identified an object as "a vest from the search team." See Exhibit 8; ROA.24-30684.1110. Counsel for the defense had previously urged the photo could depict another backpack located at Encampment. While the Court sustained the objection to the prosecutor's statement, further instruction to the jury was warranted to mitigate the prejudice. ROA.24-30684.1034. Defendant did not receive a fair trial as a result of this inadmissible evidence.

### D. Failure to Grant a Continuance

Before the trial of this matter even began, Mr. Enclade made known that the defense was not ready to proceed. Forced on the spot to advocate for himself, Mr. Enclade made known that he was not in a position to receive a fair trial. He asked specifically for new counsel and a trial continuance because he never received discovery. He stated to the trial judge that he disagreed with strategy advocated by his counsel, and he reported a lack of communication with his counsel. ROA.24-30684.488. He reported to the trial judge that he never had a defense meeting with his

31

counsel. ROA.24-30684.490. He stated "the man blatantly told me he can't win. So I feel like in his mind, he already lost the case." ROA.24-30684.488.

The Judge's disposition focused on the fact that counsel was of Mr. Enclade's own choice, but this missed the fact that the defense was not ready to proceed and there was no showing of prejudice to the Government by virtue of a short continuance.

"This court will reverse a district court's decision denying a defendant's motion for continuance only when the district court has abused its discretion and the defendant can establish that he has suffered serious prejudice." *United States v. Akins*, 746 F.3d 590, 608 (5th Cir. 2014). Our system recognizes that the right to counsel is violated when a court refused to consider defendant's allegations of good cause to substitute counsel, various dissatisfactions with his court-appointed attorney, and complaints of **failed** communication. *U.S. v. Lott,* 310 F.3d 1231, 1249 (10tt Cir. 2002). Also, the Sixth Amendment right to the assistance of counsel can be infringed by the arbitrary denial of a continuance when the effect is to deny the defendant the lawyer of his choice, even if defendant is able to hire another competent, perhaps equally or even more competent, lawyer. *United States v. Santos*, 201 F.3d 953 (7th Cir. 2000).

This Circuit has recognized that due process can be denied even in the context retained counsel. See *Gandy v. State of Ala.*, 569 F.2d 1318 (5th Cir. 1978) (trial court's failure to grant continuance the face of completely unprepared defense denied petitioner due process). Mr. Enclade was not able to participate in his defense.

32

Numerous videos were never reviewed by him and these served as the basis for his conviction. Numerous key facts that he could have provided in defense of his claims were not developed, such as his familial relationship with his co-defendant cousin, the actual meaning of "Ray", and what surveillance videos actually depicted. This underdevelopment clearly prejudiced him as he was convicted. A reversal is necessary under the circumstances.

### E.  The Sentence was Improper

A trial court has broad discretion in passing sentence. Nevertheless, "a defendant retains the right not to be sentenced on the basis of invalid premises." *United States v. Espinoza*, 481 F.2d 553, 555 (5th Cir. 1973). Sentences based upon erroneous and material information or assumptions violate due process. *United States v. Tobias*, 662 F.2d 381, 388 (5th Cir. 1981). The proper remedy where a trial court relies upon erroneous information or assumptions is to remand to the district court for a new sentencing hearing. *Id*. The appellant has the initial burden of demonstrating that the court relied upon assumptions or misinformation during sentencing. *United States v. Tobias*, 662 F.2d 381, 409 (5th Cir. 1980). The standard of review is abuse of discretion. *Id*. at 411.

Although presumptively reasonable, a sentence imposed within the guidelines is not reasonable per se. *United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006). The sentencing court should take care that a defendant's sentence is not unreasonably

33

disparate from co-defendants. *See United States v. Candia*, 454 F.3d 468 (5th Cir. 2006). Furthermore, 18 U.S. Code §3553 provides that the sentencing court shall consider the sentences of co-defendants to avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct. 18 U.S.C. Section 3553(a)(6). Unreasonable sentences are also reviewed under an abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 39 (2007).

Numerous abuses exist in the excessive sentenced handed Mr. Enclade. The trial judge gave him a sentence of 288 months, despite the fact that his co-defendant, who was noted to have a more active role in the conspiracy, a sentence of 240 months for the same count.

Mr. Enclade filed objections to the PSR, arguing *inter alia* that he should not receive a career offender designation, that the "actual" methamphetamine quantity guidelines should be rejected on policy grounds, that he should be viewed as a minor actor in the conduct charged, that his drug quantities are overstated, and that certain enhancements were not well founded. R. 24-30684.1261. He requested a downward variance or departure.

The PSR found that Enclade is a career offender based on him having at least two prior felony convictions of either a crime of violence or a controlled substance offense. The defense submitted that any sentence that does not include a downward departure/variance from the guideline range is "greater than necessary" to comply with

34

the purposes of 18 U.S.C. § 3553. The Court rejected the argument that a life sentence, essentially, for conspiracy to distribute drugs in the quantities at issue in this case is highly inappropriate. This Court did so despite being apprised of a proposed amendment that would amend §4B1.2 of the guidelines by revising the definition of "controlled substance offense" to exclude state drug offenses. R. 24-30684.1213.

Mr. Enclade filed an objection to the PSR for using the outdated "actual" meth guidelines for the more appropriate "mixture" meth guidelines in order to determine the appropriate offense level using the Drug Quantity Table set forth in §2D1.1. Due to the increased average purity of methamphetamine in the current drug market, purity should no longer shape a person's culpability or punishment. In the Eastern District of Louisiana case of *U.S. v Celestin*, No. 21-125, Judge Morgan issued a ruling that comprehensively examines why the "actual" meth guidelines should be abandoned in favor of the "mixture" guidelines. Judge Morgan even went so far as to declare that the "Court will apply the methamphetamine mixture Guidelines to all methamphetamine cases moving forward, regardless of whether the defendant requests the Court do so." (Celestin Order and Reasons, p. 12). At least three other sections in the district likewise elected to abandon the anachronistic "actual" guidelines. Judge Ashe did so in *U.S. vs. Floyd Robertson*, No. 22-89. Chief Judge Brown did so in *U.S. vs. Bryant Daigre*, No. 21-356. Finally, Judge Africk likewise ruled that way in *U.S. vs. Spencer Rounds*, No. 19-108.

Defendant objected to the quantities of drugs quantities attributed to him. The quantities listed in this PSR correspond to those recovered during the search and seizure of Encampment St. Mr. Enclade, however, was acquitted of being in possession of the drugs found on Encampment Street. Guideline §1B1.3 has been amended to add subsection (c), which provides that "[r]elevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court unless such conduct also establishes, in whole or in part, the instant offense of conviction."

Under the Sentencing Guidelines, a defendant participating in a drug conspiracy is accountable for the quantity of drugs attributable to the conspiracy and reasonably foreseeable to him. *Haines*, 803 F.3d at 740–41. Reasonable foreseeability does not follow automatically from proof that the defendant was a member of the conspiracy because "drug quantity is not a formal element of the conspiracy offense" *United States v. Aguirre-Rivera*, 8 F.4th 405, 411 (5th Cir. 2021). Reasonable foreseeability requires a finding separate from a finding that the defendant was a conspirator. *Haines,* 803 F.3d 741. Thus, for a sentencing court to attribute to a defendant a certain quantity of drugs, the court looks to the jury finding of "the amount which each defendant knew or should have known was involved in the conspiracy." *Id.*[3]  Here, the jury found only

---

[3] Thus, for a sentencing court to attribute to a defendant a certain quantity of drugs, the court must make two separate findings: (1) the quantity of the drugs in the entire operation and (2) the amount which each defendant knew or should have known was involved in the conspiracy. *United States v. Quiroz–Hernandez,* 48 F.3d 858 (5th Cir.1995), *as modified on reh'g* (May 8, 1995).

36

that Defendant should have known that the conspiracy involved 50 grams or more of methamphetamine, 40 grams or more of fentanyl, and 100 grams or more of heroin. Use of these quantities would result in a converted weight of less than 700 kilograms. This should have led to a base offense level of 26 as opposed to the 32 proposed by the PSR.

Defendant objected to the two point enhancement for possession of the firearms. This Defendant was acquitted of possession of the firearms found at the Encampment residence with the subject drugs. *Alleyne v. United States*, 570 U.S. 99, 116 (2013) requires that any fact that enhances a penalty must be submitted to the jury and proved beyond a reasonable doubt. Moreover, and again, guideline §1B1.3 now makes clear that relevant conduct does not include conduct for which the defendant was acquitted.

Defendant objected to the two point enhancement for use of a premises to distribute a controlled substance for the same reason. This Defendant was acquitted of possession of the controlled substances found at the Encampment residence. *Alleyne v. United States*, 570 U.S. 99, 116 (2013); guideline §1B1.3.

Defendant objected to his criminal history score of 15. Under USSG 4D1.2(a)(2) sentences imposed on the same day are treated as a single offense. The offenses listed in Paragraphs 69 and 77 of the PSR should have been treated as a single offense. Defendant suggested his criminal history should rather be category IV.

37

Appellant argued to the Trial Court that without the Career Offender enhancement and adjusting his criminal history to a IV, this charge for this quantity would carry a sentence of 92-115 months. The Two Hundred Eighty Eighth month sentence was inappropriate. The Sentencing Commission has acknowledged that when career offender status is based upon relatively minor drug offenses, the guidelines may create a sentence greater than necessary. *United States v. Fernandez*, 436 F.Supp.2d 983, 989 (E.D.Wis.2006). The history and characteristics of Mr. Enclade demonstrate that a sentence imposed pursuant to the guidelines without the enhancement would be just, reasonable, and certainly lengthy enough to reflect the seriousness of the offense.

Terence Wilson was charged with the exact same criminal episode as Appellant. Wilson received a sentence of 240 months, while Appellant received a sentence of 288 months. Trial evidence showed Wilson was far more involved in every aspect of the charges than Appellant. The warrant issued in this case stemmed from LEO's utilization of Confidential Informants to conduct numerous purchases of heroin/fentanyl from members of the "Tupelo Money Boys" (TMB). R. 24-30684.1203. As a result, officers were able to obtain Title III wiretap warrants for two of the Tupelo Money Boys. Through their investigation, officers learned that the TMB got their supply of heroin/fentanyl form Enclade and further discovered that Wilson was Enclade's supplier. This was not evidence introduced at trial and should not have been considered. It further demonstrates that Enclade has no real connection to the

38

drugs found at Encampment and was not the focus of this investigation.

The Final PSR reports that "Wilson was a supplier" and "Wilson supplied Enclade" which suggests Wilson was in a managerial role over Appellant. In addition to appearing more culpable than Appellant, Wilson has a much more extensive criminal history according to the Orleans Criminal District Clerk records.

Counsel timely objected to the unreasonableness of the sentence imposed. Appellant requests he be remanded for resentencing so that he may have a sentence more in line with his more culpable co-defendant. A downward adjustment should have been granted as urged. 24-30684.426. Appellant should be entitled to a new sentencing hearing.

## <u>CONCLUSION</u>

For these reasons, appellant Travis Enclade urges that his convictions should be reversed, and a judgment of acquittal entered as to each Count of the amended superseding indictment, or, in the alternative, the case remanded for a new trial or sentencing, with instructions for proceedings consistent with this Court's opinion.

Respectfully Submitted,
**COUHIG PARTNERS, LLC**

*/s/ Jonathan P. Lemann*
Jonathan P. Lemann, #26380
1100 Poydras Street, Suite 3250
New Orleans, Louisiana 70163
Phone (504) 588-1288
Telecopier (504) 588-9750
lemannjp@couhigpartners.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to Sarah Dawkins, Assistant U.S. Attorney, and all counsel of record.


*/s/ Jonathan P. Lemann*
Jonathan P. Lemann

## CERTIFICATE OF COMPLIANCE

Pursuant to the Fifth Circuit Rule 32.2.7(c), the undersigned certifies this brief complies with the type-volume limitations of the Fifth Circuit Rule 32.2.7(b).

1. Exclusive of the exempted portions provided for in the Fifth Circuit Rule 32.2.7(b), the brief contains 9049 words from Statement of Jurisdiction on page 1 to Respectfully submitted on page 39 of the brief. The Brief was prepared in proportionally spaced typeface using Microsoft Word for Mac and Times New Roman 14 point font. If the Court so requests, the Undersigned will provide an electronic version of the brief and/or copy of the word or line printout.

2. The Undersigned understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in the Fifth Circuit Rule 32.2.7, may result in the Court's striking the brief and imposing sanctions.

3. This document complies with the privacy redaction requirement of the FED. R. APP. P. 25(a)(5), 5TH CIR. R. 25.2.13, and FED. R. CRIM. P. 49.1, because it has been redacted of personal data identifiers.

4. This electronic submission is an exact copy of the paper documents in compliance with the 5TH CIR. R. 25.2.1.

5. This document is free of viruses because it has been scanned for Viruses

41

with the most recent version of Norton Antivirus, in compliance with the

5TH CIR. ECF FILING STANDARD A(6).

**COUHIG PARTNERS, LLC**

*/s/ Jonathan P. Lemann*
Jonathan P. Lemann, #26380
1100 Poydras Street, Suite 3250
New Orleans, Louisiana 70163
Phone (504) 588-1288
Telecopier (504) 588-9750
lemannjp@couhigpartners.com

42